## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STATE FARM FIRE AND CASUALTY COMPANY, | : NO. |
| Plaintiff, | : |
| v. | : |
| JACK SOLOMON, SALLY SOLOMON and SANDCRAFTERS LLC, | : |
| Defendants. | : |

### COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, State Farm Fire and Casualty Company, by and through its undersigned counsel, Kennedys CMK LLP, as and for its Complaint for Declaratory Judgment states as follows:

### JURISDICTION AND VENUE

1. This is an action for declaratory judgment pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure.

2. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a), as this action is between citizens of different states and the amount in controversy exceeds $75,000.

3. Venue is proper in the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1391(b), as a substantial part of the events giving rise to this claim occurred in the Eastern District of Pennsylvania.

### THE PARTIES

4. Plaintiff in this action is State Farm Fire and Casualty Company ("State Farm"), which is a wholly-owned subsidiary of State Farm Mutual Automobile Insurance Company, an Illinois mutual insurance company, having its principal place of business at One State Farm Plaza,

1

Bloomington, Illinois, 61710-0001. State Farm is licensed to issue, and does in fact issue, insurance policies in the Commonwealth of Pennsylvania.

5. Upon information and belief, Defendant Jack Solomon is an adult individual residing at 77 Fairfield Lane, Chester Springs, Pennsylvania, 19425.

6. Upon information and belief, Defendant Sally Solomon ("Solomon") is an adult individual residing at 77 Fairfield Lane, Chester Springs, Pennsylvania, 19425.

7. Upon information and belief, Defendant SandCrafters LLC ("SandCrafters") is a Pennsylvania corporation with a principal places of business at 77 Fairfield Lane, Chester Springs, Pennsylvania, 19425.

8. Jack Solomon is joined to this action as a named insured policyholder and State Farm has no claims directly against Jack Solomon.

9. Plaintiff issued a businessowners policy of insurance to Jack and Sally Solomon d/b/a SandCrafters, which insurance is more fully described below.

10. The scope of coverage available to Defendants is governed by the terms, conditions, and exclusions of the policy.

## NATURE OF THE ACTION

11. This is an action for declaratory judgment pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201. In this action, State Farm seeks a determination of its rights and obligations under a businessowners insurance policy issued to Defendants.

12. State Farm issued a policy bearing number 98-C4-Q548-1 to provide businessowners coverage to Jack and Sally Solomon d/b/a SandCrafters for the period of February 16, 2017 to February 16, 2018 ("Policy"). A true and correct certified copy of the Policy is attached hereto as Exhibit A.

13. The Policy is subject to certain terms, conditions, limitations, exclusions and endorsements as set forth in the Policy.

14. Solomon and SandCrafters have been named in a lawsuit captioned *Candyman Kitchens, Inc. v. SandCrafters LLC and Sally Solomon*, No. 8:18-cv-00869-SDM-CPT, in the United States District Court for the Middle District of Florida ("Underlying Action"). A true and correct copy of the Complaint in the Underlying Action is attached hereto as Exhibit B.

15. Solomon and SandCrafters sought defense and indemnity from State Farm for the Underlying Action.

16. State Farm is providing a defense to Solomon and SandCrafters pursuant to Reservation of Rights letters dated May 3, 2018. True and correct copies of the Reservation of Rights letters are attached hereto as Exhibit C.

17. State Farm seeks a determination that it has no obligation to defend or indemnify Solomon and/or SandCrafters in connection with the Underlying Action based upon certain provisions of, and exclusions in, the Policy.

## STATEMENT OF FACTS

18. The Policy provides as follows with respect to Business Liability Coverage:

**Coverage L – Business Liability**

1. When a Limit Of Insurance is shown in the Declarations for **Coverage L – Business Liability,** we will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies. …

2. This insurance applies:

   a. To "bodily injury" and "property damage" only if:

3

    **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

  **b.** To "personal and advertising injury" caused by an offense arising out of your business, but only if the offense was committed in the "coverage territory" during the policy period.

Exhibit A (emphasis in original).

19. The Policy contains the following relevant definitions:

**SECTION II – DEFINITIONS**

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

  a. Notices that are published include material placed on the Internet or on similar electronic means of communication; and

  b. Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

     \*   \*   \*

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time. "Bodily injury" includes mental anguish or other mental injury caused by the "bodily injury".

     \*   \*   \*

17. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

18. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

     \*   \*   \*

   f. The use of another's advertising idea in your "advertisement"; or

   g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

      *   *   *

  21. "Property damage" means:

   a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

   b. Loss of use of tangible property that is not physically injured or destroyed provided such loss of use is caused by physical injury to or destruction of other tangible property. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

Exhibit A (emphasis in original).

20. The Policy contains the following exclusion with respect to personal and advertising injury:

  **Section II – Exclusions**

  Applicable to **Coverage L – Business Liability**, this insurance does not apply to:

  17. **Personal And Advertising Injury**

   a. Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury";

Exhibit A (emphasis in original).

21. The Policy also contains the following exclusion with respect to personal and advertising injury:

5

> **Section II – Exclusions**
>
> Applicable to **Coverage L – Business Liability**, this insurance does not apply to:
>
> 17. **Personal And Advertising Injury**
>
>    \*   \*   \*
>
>  m. Arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatags, or any other similar tactics to mislead another's potential customers;

Exhibit A (emphasis in original).

22. The Underlying Action was brought against Solomon and SandCrafters by Candyman Kitchens, Inc. ("Candyman"). *See* Exhibit B.

23. The Underlying Action alleges that Solomon is the principal of SandCrafters (Solomon and SandCrafters are collectively referred to herein as "Defendants"). Exhibit B, ¶ 7.

24. The Underlying Action alleges that David Klein ("Klein"), President of Candyman, began using the name SANDY CANDY in October 1996 as an indicator of his edible sand art candy, produced and sold at that time by Can You Imagine That! Confections, Inc. ("Can You Imagine"), another company for which Klein was the principal. Exhibit B, ¶ 12.

25. The complaint further alleges that SANDY CANDY gained notoriety and substantial goodwill in the marketplace due to its continuous use across the nation over the past twenty-one plus years. Exhibit B, ¶ 13.

26. A trademark registration for SANDY CANDY was issued to Can You Imagine on December 26, 2000 and Can You Imagine continued to produce and distribute SANDY CANDY. Exhibit B, ¶¶ 14-15.

27. Klein opened Candyman in February of 2017, which took over production and distribution of SANDY CANDY. Exhibit B, ¶ 16.

28. Can You Imagine, also in 2017, assigned the SANDY CANDY mark to Candyman, making Candyman the current owner of the registered trademark. Exhibit B, ¶ 17.

29. The Underlying Action alleges that Klein and Solomon reached an oral agreement in early 1999 for SandCrafters to distribute SANDY CANDY products. Exhibit B, ¶ 19.

30. Defendants allegedly registered the domain name "SandyCandy.com" on May 3, 1999 with Can You Imagine's permission. Exhibit B, ¶ 20.

31. Defendants allegedly used the website only to sell SANDY CANDY products which were manufactured and provided by Can You Imagine. Subsequently, Defendants have been the largest distributor of SANDY CANDY. Exhibit B, ¶¶ 21-22.

32. At the end of 2016 and beginning of 2017, a dispute arose between the companies regarding the amount and frequency of SANDY CANDY products supplied to Defendants. Exhibit B, ¶ 23.

33. The business relationship allegedly terminated shortly after the last shipment of SANDY CANDY on or about December 1, 2016. Allegedly Candyman immediately revoked its permission for Defendants to use the SANDY CANDY mark at this time. Exhibit B, ¶¶ 24-25.

34. Candyman alleges that, since at least March of 2017, Defendants knew that SANDY CANDY was a registered trademark of which Candyman was the rightful owner. Exhibit B, ¶ 26.

35. Defendants allegedly continued to use the domain name of "SandyCandy.com" and operate the website without permission since at least March 2017. Exhibit B, ¶ 28.

36. Defendants also allegedly continued to use the SANDY CANDY mark on the website itself. The website allegedly included a phone number for customers and prospective

7

customers to contact SandCrafters and Solomon in order to purchase the SANDY CANDY products advertised on the website. Exhibit B, ¶¶ 29-30.

37. The Underlying Action alleges that once customers contacted Defendants, Defendants, specifically Solomon, took the opportunity to make false and disparaging statements about Candyman and SANDY CANDY. Exhibit B, ¶ 32.

38. Defendants also allegedly advised customers to purchase a competing edible sand art product, Pucker Powder, instead of SANDY CANDY, based on false claims of SANDY CANDY's inferior quality. Exhibit B, ¶ 33.

39. Candyman is aware of at least two specific customers - one located in Florida and one located in California - to which Defendants made the disparaging statements. *See* Exhibit B, ¶ 34.

40. The Underlying Action alleges additional customers, both in Florida and nationwide, were also confused by Defendants' website. Exhibit B, ¶ 35.

41. The Underlying Action further alleges that Defendants sent an email newsletter to an unknown number of recipients which falsely and disparagingly claimed that Candyman was improperly contacting Defendants' customers. Exhibit B, ¶ 36.

42. Candyman allegedly repeatedly demanded of Defendants through counsel that they cease their wrongful continued use of their website and the SANDY CANDY mark. Exhibit B, ¶ 37.

43. Defendants allegedly belatedly agreed to alter their website to indicate that the website was no longer available. Exhibit B, ¶ 39.

44. Candyman alleges that Defendants have profited at Candyman's expense, harmed the goodwill associated with the SANDY CANDY mark, driven customers away from Candyman's website, and caused confusion. Exhibit B, ¶¶ 40-43.

45. The Underlying Action also alleges that Defendants' wrongful continued use of their website and SANDY CANDY mark on the website operated as an advertisement that misled and deceived consumers. Exhibit B, ¶ 44.

46. Counts I and II of the Underlying Action set forth causes of action for Trademark Counterfeiting and Infringement. *See* Exhibit B.

47. Counts I and II allege that Defendants knew of Candyman's ownership of the SANDY CANDY mark and willfully used reproductions, counterfeits, copies, or colorable imitations of the mark, in violation of the Lanham Act. Exhibit B, ¶¶ 48-49.

48. Count III of the Underlying Action sets forth a cause of action for Cybersquatting. *See* Exhibit B.

49. Count III alleges that Defendants used and trafficked in their website domain with a bad faith intent to profit, well after Defendants' permission to use the SANDY CANDY mark was revoked by Candyman. Exhibit B, ¶ 55.

50. Count IV of the Underlying Action sets forth a cause of action for Federal Unfair Competition. *See* Exhibit B.

51. Count IV alleges that Defendants' actions are likely to cause confusion, mistake or to deceive with regard to Defendants' affiliation with Candyman. Exhibit B, ¶ 59.

52. Count IV also alleges that Defendants' activities constituted commercial advertising or promotion which misrepresented aspects of both Defendants' and Candyman's goods, services and activities. Exhibit B, ¶ 60.

53. Candyman requests that the court award to Candyman Defendants' profits, damages Candyman has sustained, costs of the action, treble damages, and reasonable attorneys fees with regard to all claims. *See* Exhibit B, Prayer for Relief, ¶¶ 1-3.

54. Candyman also requests certain relief specific to the counts. *See* Exhibit B.

55. In connection with the count for Trademark Counterfeiting, Candyman requests the court find Defendants' knowing and willful use of counterfeit SANDY CANDY marks violated the Lanham Act, award prejudgment interest to treble damages and attorneys fees, and award statutory damages. *See* Exhibit B, Prayer for Relief, Count I - Trademark Counterfeiting, ¶¶ A-C.

56. In connection with the Trademark Infringement count, Candyman requests the court find Defendants' use of identical or confusingly similar marks violated the Lanham Act and enjoin Defendants from continuing use of the SANDY CANDY or confusingly similar mark. *See* Exhibit B, Prayer for Relief, Count II - Trademark Infringement, ¶¶ A-B.

57. In connection with the Cybersquatting count, Candyman requests that the court find Defendants' trafficking and use of the domain name "SandyCandy.com" violated the Anticybersquatting Consumer Protection Act, order Defendants to transfer the domain name to Candyman and award statutory damages. *See* Exhibit B, Prayer for Relief, Count III - Cybersquatting, ¶¶ A-C.

58. In connection with the Federal Unfair Competition count, Candyman seeks a permanent injunction against Defendants from continuing to engage in the conduct arising to federal unfair competition. *See* Exhibit B, Prayer for Relief, Count IV – Federal Unfair Competition, ¶ A.

**REQUEST FOR DECLARATORY RELIEF**
**COUNT I**
**(Knowing Violation Exclusion)**

59. State Farm incorporates herein by reference the allegations set forth in paragraphs 1 through 58, inclusive, as if the same were fully set forth at length.

60. The Policy contains the following exclusion with respect to personal and advertising injury:

> **Section II – Exclusions**
>
> Applicable to **Coverage L – Business Liability**, this insurance does not apply to:
>
> **17.  Personal And Advertising Injury**
>
> > a.  Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury";

Exhibit A (emphasis in original).

61. The Policy defines "personal and advertising injury" as follows:

> **SECTION II – DEFINITIONS**
>
> 18.  "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:
>
> > \*          \*          \*
>
> > f.  The use of another's advertising idea in your "advertisement"; or
> >
> > g.  Infringing upon another's copyright, trade dress or slogan in your "advertisement".

Exhibit A (emphasis in original).

62. The Policy defines "advertisement," as used in the definition of "personal and advertising injury," as follows:

**SECTION II – DEFINITIONS**

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

   a. Notices that are published include material placed on the Internet or on similar electronic means of communication; and

   b. Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

Exhibit A (emphasis in original).

63. Although the Policy provides coverage for "personal and advertising injury," coverage is excluded when "personal and advertising injury" is caused by the insured with the knowledge that such acts would violate the rights of another and inflict "personal and advertising injury."

64. Defendants had permission to use Candyman's SANDY CANDY trademark in their website domain name from 1999 through December 1, 2016. Exhibit B, ¶¶ 20; 24-25.

65. Candyman revoked Defendants' permission to use the SANDY CANDY mark as of December 1, 2016. Exhibit B, ¶ 24-25.

66. Candyman alleges that, since at least March of 2017, Defendants knew that SANDY CANDY was a registered trademark of which Candyman was the rightful owner. Exhibit B, ¶ 26.

67. Defendants allegedly continued to use the domain name of "SandyCandy.com" and operate the website without permission since at least March 2017. Exhibit B, ¶ 28.

68. Defendants also allegedly continued to use the SANDY CANDY mark on the website itself. The website allegedly included a phone number for customers and prospective customers to contact SandCrafters and Solomon in order to purchase the SANDY CANDY products advertised on the website. Exhibit B, ¶¶ 29-30.

69. Candyman allegedly repeatedly demanded of Defendants through counsel that they cease their wrongful continued use of their website and the SANDY CANDY mark. Defendants belatedly altered the website. Exhibit B, ¶¶ 37; 39.

70. The Underlying Action also alleges that Defendants' wrongful continued use of their website and SANDY CANDY mark on the website operated as an advertisement that misled and deceived consumers. Exhibit B, ¶ 44.

71. The factual allegations of the Underlying Action clearly allege that Defendants have knowingly used Candyman's advertising idea and infringed on Candyman's trademark of SANDY CANDY by continuing to use the SANDY CANDY mark on Defendants' website domain name after Defendants knew permission had been revoked.

72. Because the Underlying Action alleges that Defendants SandCrafters and Solomon have caused Candyman "personal and advertising injury" with the knowledge that their actions would violate Candyman's rights and would inflict "personal and advertising injury," the Underlying Action falls within the "knowing violation" exclusion of the Policy

73. As a result, the claims set forth in the Underlying Action are excluded by the Policy, and State Farm has no duty to defend SandCrafters and/or Solomon for the claims asserted in the Underlying Action.

74. Moreover, because State Farm has no duty to defend SandCrafters and/or Solomon for the claims asserted in the Underlying Action, State Farm has no duty to indemnify SandCrafters

and/or Solomon for the Underlying Action.

WHEREFORE, State Farm seeks a judgment that it has no duty under the Policy to defend and/or indemnify SandCrafters and/or Solomon for the claims brought against them in the Underlying Action.

## COUNT II
### (Unauthorized Use Exclusion)

75. State Farm incorporates herein by reference the allegations set forth in paragraphs 1 through 74, inclusive, as if the same were fully set forth at length.

76. The Policy contains the following exclusion with respect to personal and advertising injury:

> **Section II – Exclusions**
>
> Applicable to **Coverage L – Business Liability**, this insurance does not apply to:
>
> 17. **Personal And Advertising Injury**
>
> \*   \*   \*
>
> m. Arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatags, or any other similar tactics to mislead another's potential customers;

Exhibit A (emphasis in original).

77. The Policy defines "personal and advertising injury" as follows:

> **SECTION II – DEFINITIONS**
>
> 18. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:
>
> \*   \*   \*
>
> f. The use of another's advertising idea in your "advertisement"; or

14

    g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

Exhibit A (emphasis in original).

78. The Policy defines "advertisement," as used in the definition of "personal and advertising injury," as follows:

**SECTION II – DEFINITIONS**

  1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

    a. Notices that are published include material placed on the Internet or on similar electronic means of communication; and

    b. Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

Exhibit A (emphasis in original).

79. Although the Policy provides coverage for "personal and advertising injury," coverage is excluded when "personal and advertising injury" arises out of the unauthorized use of another's name or product in the insured's domain name.

80. Defendants had permission to use Candyman's SANDY CANDY trademark in their website domain name from 1999 through December 1, 2016. Exhibit B, ¶¶ 20; 24-25.

81. Candyman revoked Defendants' permission to use the SANDY CANDY mark as of December 1, 2016. Exhibit B, ¶ 24-25.

82. Defendants allegedly continued to use the domain name of "SandyCandy.com" and operate the website without permission since at least March 2017. Exhibit B, ¶ 28.

83. Candyman allegedly repeatedly demanded of Defendants through counsel that they cease their wrongful continued use of their website and the SANDY CANDY mark. Defendants belatedly altered the website. Exhibit B, ¶¶ 37; 39.

84. The Underlying Action also alleges that Defendants' wrongful continued use of their website and SANDY CANDY mark on the website operated as an advertisement that misled and deceived consumers. Exhibit B, ¶ 44.

85. The factual allegations of the Underlying Action clearly allege that Defendants continued to use Candyman's trademark of SANDY CANDY in their website domain name without authorization to use the SANDY CANDY name and product. In fact, the use of Candyman's SANDY CANDY name and/or product by Defendants had been specifically revoked by Candyman.

86. Because the Underlying Action alleges that Defendants SandCrafters and Solomon have caused Candyman "personal and advertising injury" arising out of the unauthorized use of the SANDY CANDY name in Defendants' domain name, the Underlying Action falls within the "unauthorized use" exclusion of the Policy

87. As a result, the claims set forth in the Underlying Action are excluded by the Policy, and State Farm has no duty to defend SandCrafters and/or Solomon for the claims asserted in the Underlying Action.

88. Moreover, because State Farm has no duty to defend SandCrafters and/or Solomon for the claims asserted in the Underlying Action, State Farm has no duty to indemnify SandCrafters and/or Solomon for the Underlying Action.

WHEREFORE, State Farm seeks a judgment that it has no duty under the Policy to defend and/or indemnify SandCrafters and/or Solomon for the claims brought against them in the Underlying Action.

### **REQUEST FOR DECLARATORY RELIEF**

89. State Farm incorporates herein by reference the allegations set forth in paragraphs 1 through 88, inclusive, as if the same were fully set forth at length.

90. An actual and justiciable controversy exists concerning the rights and obligations of the parties under the State Farm Policy at issue with respect to the Underlying Action.

91. All parties have a claim or interest in the outcome of the declaratory relief sought by this action.

92. State Farm is entitled to a declaration that it is under no obligation to defend SandCrafters and/or Solomon with regard to the claims asserted in the Underlying Action.

93. State Farm is further entitled to a declaration that it has no duty to indemnify SandCrafters and/or Solomon with regard to the claims asserted in the Underlying Action.

WHEREFORE, Plaintiff, State Farm Fire and Casualty Company, demands judgment as follows:

    a. A declaratory judgment that State Farm has no obligation to defend Sally Solomon with regard to the claims asserted in the Underlying Action;

    b. A declaratory judgment that State Farm has no obligation to indemnify Sally Solomon with regard to the claims asserted in the Underlying Action;

    c. A declaratory judgment that State Farm has no obligation to defend SandCrafters LLC with regard to the claims asserted in the Underlying Action;

    d. A declaratory judgment that State Farm has no obligation to indemnify SandCrafters LLC with regard to the claims asserted in the Underlying Action;

e.  Such other further relief as this Court deems just and proper.

Respectfully Submitted,

BY: _____
Bradley J. Mortensen (PA 54558)

BY: _____
Elizabeth A. Sutton (PA 205904)

BY: _____
Victoria E. Allen (PA 320825)

KENNEDYS CMK LLP
Two Liberty Place
50 South 16th Street, Suite 2625
Philadelphia, PA 19102
Phone: (267) 479-6700
Fax: (267) 479-6710

Attorneys for Plaintiff,
State Farm Fire and Casualty Company

Dated: 5/16/18